UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
UNITED STATES OF AMERICA,              :
                                       :
          v.                           :     **ORDER**
                                       :     21-CR-180 (WFK)
JOEY DUNN,                             :
                                       :
                    Defendant.         :
------------------------------------------------------------X

**WILLIAM F. KUNTZ, II, United States District Judge**: On August 9, 2022, Defendant pled guilty to the sole count of an Indictment charging him with possessing a firearm, namely a destructive device as defined in 26 U.S.C. § 5845(a)(8), (f)(1), and (f)(3), which was not registered to him in the National Firearms Registration and Transfer Record, in violation of 26 U.S.C. § 5861(d). Indictment ¶ 1, ECF No. 1; Plea Agreement ¶ 1, ECF No. 26. The Court now sentences Defendant and provides a complete statement of reasons pursuant to 18 U.S.C. § 3553(c)(2) of those factors set forth by Congress in 18 U.S.C. § 3553(a). For the reasons set forth below, Defendant is hereby sentenced to 12 months and one day of imprisonment followed by two years of supervised release with both standard and special conditions. Defendant is also required to pay a mandatory special assessment of $100.00.

## I.      Background

The New York City Police Department ("NYPD"), in conjunction with officials from the Bureau of Alcohol, Tobacco, Firearms, and Explosive ("ATF"), conducted the investigation into the instant offense. Presentence Investigation Report ("PSR") ¶ 6, ECF No. 31. On September 29, 2020, Defendant's former girlfriend reported to the NYPD that an individual had thrown what appeared to be a lit Molotov cocktail at her house, causing a burn mark and damage to the siding. *Id.* ¶ 7. An investigation revealed the Molotov cocktail did not ignite when it hit the house, but rather ricocheted off the side of the house onto the sidewalk, where the bottle broke and its contents spilled onto the ground. *Id.* According to an ATF report, the Molotov cocktail, which was designed as an improvised incendiary device, was constructed with a glass bottle, a makeshift cloth wick, and gasoline. *Id.* According to Defendant's former girlfriend, the night before she discovered the broken bottle and the damage to her home, Defendant called her and

1

made angry comments, apparently under the influence of alcohol. *Id.* ¶ 8. Defendant's former girlfriend later identified Defendant in video surveillance footage from the residence and surrounding area. *Id.* ¶ 9. Additionally, cell cite-site information obtained through a warrant revealed Defendant traveled to his former girlfriend's house at the time of the incident. *Id.*

On April 2, 2021, a grand jury returned a single-count Indictment charging Defendant with possessing a destructive device as defined in 26 U.S.C. § 5845(a)(8), (f)(1), and (f)(3), which was not registered to him in the National Firearms Registration and Transfer Record, in violation of 26 U.S.C. § 5861(d). Indictment ¶ 1, ECF No. 1. The Indictment also contains a criminal forfeiture allegation. *Id.* ¶¶ 2-3. Defendant was arrested by agents of the United States Marshals Service on May 4, 2021. PSR ¶ 10.

On August 9, 2022, Defendant pled guilty to the Indictment's sole count. Plea Agreement, ECF No. 26. As part of his plea agreement, Defendant agreed not appeal or otherwise challenge his conviction or sentence if the Court imposes a term of imprisonment at or below 33 months. *Id.* ¶ 4.

## II.    Legal Standard

18 U.S.C. § 3553 outlines the procedures for imposing sentence in a criminal case. The "starting point and the initial benchmark" in evaluating a criminal sentence is the Guidelines sentencing range. *Gall v. United States*, 552 U.S. 38, 49 (2007). If and when a district court chooses to impose a sentence outside of the Sentencing Guidelines range, the court "shall state in open court the reasons for its imposition of the particular sentence, and . . . the specific reason for the imposition of a sentence different from that described" in the Guidelines. 18 U.S.C. § 3553(c)(2). The court must also "state[] with specificity" its reasons for so departing "in a statement of reasons form." *Id.*

2

"The sentencing court's written statement of reasons shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Davis*, 08-CR-0332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.). Section 3553(a) provides a set of seven factors for the Court to consider in determining what sentence to impose on a criminal defendant. The Court addresses each in turn.

### III.    Analysis

#### A. The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant

The first § 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

##### 1.    Family and Personal Background

Defendant was born on October 5, 1970, in Weldon, North Carolina, to Joseph Sledge and Margo Dunn. PSR ¶ 43. Defendant did not have a relationship with his father, who died when Defendant was only 14 years old. *Id.* Defendant's mother was a teenager when she had Defendant. Defense Sentencing Memorandum ("Def. Mem") at 2, ECF No. 4. While Defendant's mother was present during his youth, she reportedly "largely abandoned him to his grandmother, aunt, and uncle's care." *Id.*; *see also* PSR ¶ 45. Defendant's grandmother lived in lower-economic circumstances, but was able to provide a home in which Defendant's basic needs were met. PSR ¶ 45. When Defendant was a teenager, his grandmother also passed away. Def. Mem. at 2-3. According to defense counsel, Defendant's aunt and uncle eventually moved to New York with the understanding that Defendant's mother would return to North Carolina to raise Defendant. *Id.* at 3. However, Defendant's mother did not return and he was instead taken in by a neighbor. *Id.*

3

While Defendant never married, he was previously in a twenty-year relationship with Sharon Williams, with whom he shares four children. PSR ¶ 46. Defendant remains close with Ms. Williams and his children, all of whom are aware of the instant offense and remain supportive. *Id.*

In the mid-2010s, Defendant began to date the woman who was the victim of the instant offense. Def. Mem. at 3. Defense counsel describes this relationship as "abusive," and notes that, after his former girlfriend was diagnosed with breast cancer in the Spring of 2020, she "began to lash out unpredictably, and became violent," threatening Defendant when he tried to leave the house or the relationship. *Id.* According to the report prepared by a psychologist and attached to defense counsel's sentencing memorandum, Defendant reported physical assaults at the hands of this former girlfriend, including an incident where she held a knife to his neck. Ex. A to Def. Mem. at 4. The psychologist notes Defendant described what she identifies as Post-Traumatic Stress Disorder ("PTSD") symptoms stemming from this relationship. *Id.* at 5-6. Also in 2020, and as described in more detail below, Defendant lost his job as a result of the pandemic, rendering him "financially attached to an abusive relationship." Def. Mem. at 3. When he finally moved out of the home he shared with his former girlfriend, Defendant was jobless and financially insecure. *Id.* at 3-4. As explained below, this contributed significantly to his substance abuse and feelings of depression and suicidality. *Id.* at 3-5; PSR ¶ 53.

2.    Educational and Employment History

Defendant received his Graduate Equivalency Diploma ("GED") in 1991 while incarcerated in North Carolina. PSR ¶ 60. Prior to receiving his GED, he attended Weldon High School in North Carolina through the 11th grade. *Id.* ¶ 61.

4

Between 2003 and 2020, Defendant was consistently employed for multiple year stretches at a time, working for a construction company, a pulp and paper company, a landscaping company, a rehabilitation center, and, from 2015 through 2020, for a Walmart in Levittown, New York. *Id.* ¶¶ 65-67. Defendant was let go from his job at Walmart in 2020 as a result of the COVID-19 pandemic. *Id.* ¶ 65. Defendant was then unemployed following his release until September of 2021. *Id.* ¶ 64. In September of 2021, Defendant obtained part-time employment at a Shoprite in Uniondale, New York. *Id.* ¶ 63. Defendant has been unemployed since January of 2023 due to the arthritis pain in his knee. Addendum to PSR at 3, ECF No. 48.

3.     Prior Convictions

Defendant has seven prior adult convictions, three of which were felonies. PSR ¶¶ 28-33. All three of those felony convictions occurred over 19 years ago, and, with the exception of one felon in possession conviction, related to the possession and sale of cocaine. *Id.* ¶¶ 27-28, 30.

4.     Physical and Mental Health

Defendant reported suffering from arthritis, which affects his mobility. PSR ¶ 50. Otherwise, Defendant reported no physical health conditions. *Id.*

As for mental health, Defendant reported struggling with depression and suicidal ideation. Def. Mem. at 5; PSR ¶ 53. The psychologist report attached to defense counsel's sentencing memorandum notes that Defendant meets the criteria for Major Depressive Disorder and PTSD. Ex. A to Def. Mem. at 7. With respect to Defendant's PTSD, the psychologist reports Defendant has attachment trauma stemming from his childhood, as well as trauma stemming from his recent romantic relationship with the victim of the instant offense. *Id.* at 7-8.

5.     Substance Abuse

5

Defendant has a long history of substance abuse, struggling primarily with cocaine and alcohol addiction. PSR ¶¶ 55-59; Def. Mem. at 4-5. Defendant used cocaine for 35 years, and was arrested for cocaine related offenses in 1990, 1992, and 1995. Def. Mem. at 4; PSR ¶¶ 27-30.

While earlier in his life he considered himself a "functional" user able to maintain a job and interpersonal relationships, Defendant "began using cocaine weekly, and then more than weekly, along with drinking to the point of blackout" after he lost his job and escaped what defense counsel describes as an abusive relationship in 2020. Def. Mem. at 4. His substance abuse continued after his instant arrest, and, according to both defense counsel and the Government, he "hit rock bottom" in January of 2023, at which point he appeared before this Court and "told Your Honor that he was 'crying out for help.'" Def. Mem. at 2, 4; Gov't Mem. at 3. Following that proceeding, in February of 2023, Defendant entered a Court-ordered inpatient rehabilitation program at Cornerstone of Medical Arts Center in Queens, New York. Def. Mem. at 2. On March 6, 2024, Defendant began outpatient mental health and substance abuse treatment, consisting of 16 weekly sessions, which he continues to this day. *Id.* While Defendant continued to test positive for illegal substances throughout much of 2023, his last positive test occurred on November 13, 2023. Addendum to PSR at 2. Since then, Probation reports no instances of noncompliance. *Id.* at 3. According to defense counsel, Defendant "has amassed more than thirty-five consecutive negative toxicology tests (and no positive tests) over the last nine months." Def. Mem. at 1.

6.     Nature and Circumstances of the Offense

The Court's previous statements make clear the nature and circumstances surrounding the instant offense. *See supra* Part I.

6

**B.  The Need for the Sentence Imposed**

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

The Court recognizes the seriousness of Defendant's offense, which involved throwing a makeshift incendiary device at the residence of his former girlfriend. *See supra* Part I.  The Court's sentence will deter others from engaging in similar acts and justly punishes Defendant for his crimes.

**C.  The Kinds of Sentences Available**

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant.  18 U.S.C. § 3553(a)(3).

Defendant pled guilty to the sole count of the Indictment, charging him with possessing a destructive device as defined in 26 U.S.C. § 5845(a)(8), (f)(1), and (f)(3), which was not registered to him in the National Firearms Registration and Transfer Record, in violation of 26 U.S.C. § 5861(d).  Indictment ¶ 1.

For this offense, Defendant faces a maximum term of imprisonment of 10 years.  26 U.S.C. § 5871.  Defendant also faces a maximum term of supervised release of three years.  18 U.S.C. § 3583(b)(2).  If a condition of release is violated, Defendant may be sentenced to up to two years of imprisonment without credit for pre-release imprisonment or time previously served on post release supervision.  18 U.S.C. § 3583(e).  Because the instant offense is a Class C

Felony, Defendant is eligible for not less than one nor more than five years of probation.  18

U.S.C. § 3561(c)(1).  Unless extraordinary circumstances exist, one of the following must be

imposed as a condition of probation: a fine, restitution, or community service.  18 U.S.C. §

3563(a)(2).  While restitution is mandatory in this case pursuant to 18 U.S.C. § 3663A,

restitution cannot be determined as the loss suffered by the victim of the offense is unknown.

PSR ¶ 85.  Defendant faces a maximum fine in the amount of $10,000.00.  26 U.S.C. § 5871.

However, Defendant's financial profile indicates he is unable to pay such a fine.  PSR ¶ 74.

Finally, Defendant is subject to a mandatory $100.00 special assessment.  18 U.S.C. §

3013(a)(2)(A).

### D.  The Kinds of Sentence and the Sentencing Range Established for Defendant's Offenses

The fourth § 3553(a) factor requires the Court to discuss "the kinds of sentence and the

sentencing range established for . . . the applicable category of offense committed by the

applicable category of defendant as set forth in the guidelines."  *Id.* § 3553(a)(4)(A).

The applicable Guideline for violations of 26 U.S.C. § 5861, as contained in the sole

count of the Indictment, is U.S.S.G. §2K2.1(a)(5).  U.S.S.G. §2K2.1(a)(5) provides for a base

offense level of 18 where, as here, the offense involved a firearm as described in 26 U.S.C. §

5845(a).  Because this offense involved a destructive device other than a portable rocket, a

missile, or a device for use in launching a portable rocket or a missile, two additional levels are

added pursuant to U.S.S.G §2K2.1(b)(3)(B).  Defendant's timely acceptance of responsibility

results in a three-level reduction pursuant to U.S.S.G. §3E1.1.  All parties agree with these

calculations.  PSR ¶¶ 15-16, 23-24; Def. Mem. at 2, ECF No. 44; Government Sentencing

Memorandum ("Gov't Mem.") at 2, ECF No. 46; *see also* Supplement to Defense Sentencing

Memorandum ("Def. Mem. Suppl."), ECF No. 47.

Probation maintains an additional four levels should be added pursuant to U.S.S.G. §2K2.1(b)(6)(B) because Defendant committed the instant offense in connection with another felony offense, namely, attempted arson.  PSR ¶ 17; Addendum to PSR at 1.  However, both defense counsel and the Government oppose such an enhancement.  Def. Mem. at 2; Gov't Mem. at 2.  Defense counsel and the Government assert the plea agreement correctly omits such an enhancement.  *Id.*  Defense counsel asserts this enhancement is inappropriate given the facts of this case.  Def. Mem. at 2.  While the Government "agrees that this enhancement could apply here," it intends to construe the Guidelines range as calculated in the plea agreement, which it contends is especially warranted "in light of the fact that [Defendant] is not charged with attempted arson."  Gov't Mem. at 2.

Given the enhancement, Probation calculates Defendant's total adjusted offense level to be 21.  PSR ¶ 25.  The Government and defense counsel, on the other hand, calculate Defendant's total adjusted offense level to be 17, as outlined in the plea agreement.  Def. Mem. at 2; Def. Mem. Suppl. at 1; Gov't Mem. at 2; *see also* Plea Agreement ¶ 2.  The Court agrees with the Government and defense counsel that Defendant's total adjusted offense level is 17.

Defendant has a criminal history score of 0.  U.S.S.G. §4A1.2; PSR ¶¶ 27-33.  This results in a criminal history category of I.  U.S.S.G. §5A.  All parties agree that Defendant is appropriately in criminal history category I.  Def. Mem. at 1-2; Gov't Mem. at 2; PSR ¶ 34.

A total adjusted offense level of 17, as calculated by the Government and defense counsel, and as contemplated in the plea agreement, and a criminal history category of I result in a Guidelines imprisonment range of between 24 and 30 months.  U.S.S.G. §5A.  Def. Mem. at 2; Gov't Mem. at 2; Plea Agreement ¶ 2.

Probation initially recommended a sentence of 37 months of custody to be followed by two years of supervised release with special conditions. Probation Recommendation at 1, ECF No. 31-1. At sentencing, Probation revised its recommendation, arguing instead for a term of incarceration of 12 months and one day followed by two years of supervised release. Probation also recommends the imposition of the $100.00 mandatory assessment. *Id.* at 2. Probation does not recommend the Court impose a fine, as Defendant appears unable to pay such a fine. *Id.* at 4.

Probation suggests a sentence of 37 months is warranted because the instant offense, which involved an attempt to set his former girlfriend's house on fire, is serious. *Id.* at 3. Probation notes his prior convictions indicate Defendant is unlikely to maintain a law-abiding life, and therefore a significant sentence is necessary for both specific and general deterrence purposes. *Id.*

Defense counsel recommends a term of supervised release and no term of incarceration. Def. Mem. at 1. Defense counsel also recommends continued mental health and substance abuse treatment as conditions of his supervision. *Id.*

Defense counsel argues a term of supervision, not incarceration, is warranted because Defendant's offensive conduct was "borne of the confluence of extraordinary factors," highlighting in particular his struggle with substance abuse at the time of the offense, the recent loss of his job and corresponding financial stress, and the "emotional trauma following the explosive end of a volatile long-term relationship." *Id.* Specifically, Defense counsel explains that in 2020, when Defendant lost his job, he was also dealing with a partner, the victim of the instant offense, who "became violent," "would destroy property in their home," and "would threaten him when he attempted to leave the relationship and the house." *Id.* at 3. According to defense counsel, when Defendant finally escaped the abusive relationship, he was jobless,

"broke, deeply depressed, and alone." *Id.* at 3-4. Citing the psychologist's report attached to her

sentencing submission, defense counsel notes this left him feeling "'emasculated' about the

'traumatic experiences perpetrated by his former female partner,'" and, because he was

"'[s]ocialized within a culture and age cohort that taught men to remain silent about struggles,'

he sought solace in substances rather than people." *Id.* at 4 (quoting Ex. A to ECF No. 44

(internal citations omitted)). Defense counsel also highlights Defendant's difficult upbringing,

and the lack of any stable parental figure, which she argues "left him ill-prepared for a successful

adult life." *Id.* at 3.

Defense counsel argues Defendant is not the person he was when he committed the

instant offense, explaining his arrest "marked the start of a harrowingly difficult journey of self-

discovery" which included intensive mental health and substance abuse therapy that has resulted

in more than 35 consecutive negative toxicology tests over the last nine months. *Id.* at 1.

Defense counsel notes this road to recovery was not free of setbacks, citing a downward spiral in

late 2022 that culminated in an appearance before this Court in which Defendant stated he was

"crying out for help." *Id.* at 2. After that appearance, Defendant began outpatient mental health

and substance abuse treatment consisting of 16 weekly sessions, which he continues to attend

regularly to this day. *Id.* Defense counsel writes:

> Having been out of prison for twenty-five years, he committed himself to getting
> his life back on track. He found work in the maintenance department at Shoprite.
> He cut off all contact with his former partner. He remade his life around the
> support of the strong elders around him—his mother, aunt, and uncle, who all
> lived nearby. He strengthened his bonds with his children. He earned the trust of
> this Court, and was no longer subjected to a curfew. He pled guilty, accepting
> responsibility for what he did, and committed himself to positive change.

*Id.* at 4.

Finally, defense counsel highlights Defendant's commitment to therapy and vocational rehabilitation, providing statements from a counselor and a Mitigation and Social Work Supervisor detailing his progress and commitment to rehabilitation. *Id.* at 5.

This Court has read and considered the exhibits to defense counsel's submissions, which include: the report of clinical psychologist Kathy Pruzan, which provides important insights into Defendant's mental state, Ex. A to Def. Mem.; documents related to Defendant's therapy and substance abuse treatment programs, Ex. B to Def. Mem.; and letters of support written by Defendant's counselors, supervisors, and loved ones, Ex. C to Def. Mem.; ECF No. 45. The letters of support written by Defendant's family members and supporters describe Defendant as a "genuinely good person" with an "unwavering commitment to kindness and integrity in all aspects of his life," Ex. C to Def. Mem. at 1, who "would give anybody the shirt off his back if they didn't have one themselves," *id.* at 3. A letter submitted by Defendant's aunt describes him as a hardworking, respectful man, who has shown over the last four years that he is ready to put this conduct behind him. ECF No. 45. The Court appreciates these submissions and the words Defendant's advocates have said on his behalf.

The Government recommends three years of supervised release and no period of incarceration. Gov't Mem. at 1. The Government notes its recommendation of a below-Guidelines, non-custodial sentence "is not a decision [it] makes lightly." *Id.* at 2. The Government notes Defendant "has had a difficult life, compounded by mental health struggles and substance abuse issues." *Id.* While the Government acknowledges that the conduct underlying the instant offense "represents drastic and dangerous behavior" and "could easily have led to a much graver outcome," it suggests the "incident was an aberration." *Id.* at 2-3.

The Government agrees with defense counsel that, since Defendant hit "'rock bottom' in 2023, he has taken great strides to accept help and work toward a better self." *Id.* at 3.  The Government argues, given this progress, "a period of incarceration, even if not lengthy, would derail the careful work of so many invested participants:  the defendant himself, his family, his attorneys and social workers, treatment providers, Pretrial Services, and indeed, this Court." *Id.* The Government notes, if the Court grants its request, the Defendant's term of supervision "will be stringent, and the defendant will have to continue on a path of no missteps." *Id.*  If he does not continue, the Government suggests, "he will most likely only harm himself." *Id.*

This Court appreciates the sentencing arguments raised by all parties and has considered each of these arguments in turn.

### E.  Pertinent Policy Statement(s) of the Sentencing Commission

The fifth § 3553(a) factor requires the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission."  18 U.S.C. § 3553(a)(5).

Probation notes an upward departure may be warranted pursuant to U.S.S.G. §4A1.3(a)(1) (Policy Statement), because Defendant sustained several criminal convictions which did not result in criminal history points due to how long ago those crimes were committed. PSR ¶ 88; *see also* U.S.S.G. §4A1.2(e)(3).  The parties have not drawn the Court's attention to any other applicable policy statements.  Finding none on its own, the Court proceeds to the next § 3553(a) factor.

### F.  The Need to Avoid Unwarranted Sentence Disparities

The sixth § 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."  18 U.S.C. § 3553(a)(6).  For the reasons stated in this Memorandum and

13

Order, and considering the other six § 3553(a) factors, the Court's sentence avoids unwarranted sentence disparities.

**G.  The Need to Provide Restitution**

Finally, the seventh § 3553(a) factor requires the Court to touch upon "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a)(7).  As explained previously, restitution is mandatory in this case pursuant to 18 U.S.C. § 3663A.  However, because the loss amount loss suffered by the victim of the offense is unknown, restitution is not yet determinable.  PSR ¶ 85.  The Court reserves its right pursuant to 18 U.S.C. § 3664(d)(5) to hold an evidentiary hearing within 90 days after this sentencing to determine any additional amounts owed to Defendant's victims.

## IV.    CONCLUSION

For the reasons set forth above, the Court imposes a sentence of 12 months and one day of imprisonment to be followed by two years of supervised release with both standard and special conditions.  The Court also orders a $100.00 mandatory special assessment.  This sentence is sufficient but no greater than necessary to accomplish the purposes of § 3553(a)(2). The Court does not impose a fine because Defendant appears unable to pay a fine.

The Court expressly adopts the factual findings of the Presentence Investigation Report, ECF No. 31, and the addendum thereto, ECF No. 48, barring any errors contained therein, to the extent those findings are not inconsistent with this opinion and imposes the standard conditions of release.  The Court also imposes most of the special conditions of release proposed by the Probation Department, but does *not* impose the proposed search condition.

14

**SO ORDERED.**

**s/ WFK**

HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: August 23, 2024
Brooklyn, New York